UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

VLADIMIR JEANTY,

                              Plaintiff,                  6:16-cv-00966 (BKS/TWD)

v.

THE CITY OF UTICA; THE COUNTY OF ONEIDA; Chief of Police MARK WILLIAMS, Utica Police Dept., individually and in his official capacity; Police Officer MICHAEL F. CERMINARO, badge #1301, individually and in his official capacity; Investigator PETER PALADINO, badge #6290, individually and in his official capacity; Lieutenant SEAN DOUGHERTY, badge #2553, individually and in his official capacity; Police Officer EDWARD HAGEN, badge #3750, individually and in his official capacity; Police Officer ADAM HOWE, badge #4047, individually and in his official capacity; Police Officer MICHAEL PETRIE, badge #6612, individually and in his official capacity; Police Officer DANIEL TAURISANO, badge #8381, individually and in his official capacity; Sergeant DAVID DARE, badge #1960, individually and in his official capacity; Sergeant PETER SCALISE, badge #7547, individually and in his official capacity; Lieutenant LOUIS CAPRI, badge #1174, individually and in his official capacity; Investigator JOSEPH TREVASANI, badge #8529, individually and in his official capacity; First Assistant Corporation Counsel CHARLES N. BROWN, City of Utica, individually and in his official capacity; Honorable SCOTT D. MCNAMARA, Oneida County District Attorney, individually and in his official capacity; MICAELA PARKER, individually and as an employee of Gatehouse Media, LLC; FRAN PERRITANO, City Editor, individually and as an employee of Gatehouse Media, LLC; RON JOHNS, Editor, individually and as an employee of Gatehouse Media, LLC; GATEHOUSE MEDIA, LLC,

                              Defendants.

---

**APPEARANCES:**

Vladimir Jeanty
Uniondale, NY 11553
*Plaintiff, pro se*

Michael J. Grygiel
Greenberg Traurig, LLP
54 State Street, 6th Floor
Albany, NY 12207
*Attorneys for Defendants GateHouse Media, LLC, Micaela Parker, Fran Perritano, and Ron Johns (the "Press Defendants")*

Zachary C. Oren
First Assistant Corporation Counsel
One Kennedy Plaza
Utica, NY 13502
*Attorneys for Defendants City of Utica, Michael Cerminaro, Peter Paladino, Sean Dougherty,[1] Mark Williams, Edward Hagen, Adam Howe, Michael Petrie, Daniel Taurisano, David Dare, Peter Scalise, Luis Capri, Joseph Trevasani, and Charles N. Brown (the "Utica Defendants")*

William P. Schmitt
Schmitt & Lascurettes, LLC
1508 Genesee Street, Suite 3
Utica, NY 13502
*Attorneys for Defendants Honorable Scott D. McNamara and County of Oneida (the "County Defendants")*

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

Presently before the Court is a motion by pro se Plaintiff Vladimir Jeanty, (Dkt. No. 108), seeking: (1) reconsideration or alternatively certification for interlocutory appeal under 28 U.S.C. § 1292(b) of the Court's August 18, 2017 Memorandum-Decision and Order (the "Decision"), (Dkt. No. 99), which dismissed with prejudice Plaintiff's procedural due process fair trial claim

---

[1] Mr. Owen represented Defendant Dougherty in opposing the second motion for reconsideration. After briefing on this motion was complete, David A. Bagley of Kernan Professional Group, LLP filed a notice of appearance and a stipulation of substitution as counsel of record for Defendant Dougherty in place of Mr. Owen. (Dkt. No. 131). The stipulation was so ordered by Magistrate Judge Thérèse Wiley Dancks on February 9, 2018. (Dkt. No. 132).

against the Utica Defendants (Count 1 of the Amended Complaint); and (2) certification for interlocutory appeal under § 1292(b) or certification of final judgment under Fed. R. Civ. P. 54(b) of the Decision's dismissal with prejudice of Plaintiff's defamation and respondeat superior claims against the Press Defendants (Counts 9 and 10 of the Amended Complaint). For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

The Court assumes familiarity with the procedural and factual background of this case, as set forth in its August 18, 2017 Decision. (*See* Dkt. No. 99).

## III.    STANDARD OF REVIEW

### A.    Reconsideration

In general, a motion for reconsideration may only be granted upon one of three grounds: (1) an intervening change of controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or prevent manifest injustice. *United States v. Zhu*, 41 F. Supp. 3d 341, 342 (S.D.N.Y. 2014) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)); *see also Shannon v. Verizon N.Y., Inc.*, 519 F. Supp. 2d 304, 307 (N.D.N.Y. 2007). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). When adjudicating a motion for reconsideration, a court need not consider arguments that were raised for the first time in the pending motion. *See Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015); *Gun Hill Rd. Serv. Station v. ExxonMobil Oil Corp.*, No. 08-cv-7956, 2013 WL 1804493, at *1, 2013 U.S. Dist. LEXIS 63207, at *3–4 (S.D.N.Y. Apr. 18, 2013). Moreover, "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Gun Hill Rd. Serv. Station*,

3

2013 WL 1804493, at *1, 2013 U.S. Dist. LEXIS 63207, at *3. "The standard for reconsideration is strict and is committed to the discretion of the court." *SEC v. Wojeski*, 752 F. Supp. 2d 220, 223 (N.D.N.Y. 2010), *aff'd sub nom. Smith v. SEC*, 432 F. App'x 10 (2d Cir. 2011); *see also New York v. Parenteau*, 382 F. App'x 49, 50 (2d Cir. 2010) ("A motion for reconsideration is 'generally not favored and is properly granted only upon a showing of exceptional circumstances.'" (quoting *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004))).

### B. Certification Under 28 U.S.C. § 1292(b)

A district court may certify an order for interlocutory appeal where "[1] such order involves a controlling question of law as to which [2] there is substantial ground for difference of opinion and . . . [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "Certification is only warranted in 'exceptional cases,' where early appellate review 'might avoid protracted and expensive litigation.'" *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 226 (S.D.N.Y. 2000) (quoting *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F. Supp. 170, 172 (S.D.N.Y. 1987)). "Section 1292(b) was not intended . . . to be a 'vehicle to provide early review of difficult rulings in hard cases.'" *Id.* (quoting *German ex rel. German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995)). Therefore, "only 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) (alteration in original) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)). And "even if the order qualifie[s] for certification under 28 U.S.C. § 1292(b), the certification decision is entirely a matter of discretion for the district court." *Michael Shovah v. Roman Catholic Diocese of Albany, N.Y., Inc.* (*In re Roman Catholic Diocese of Albany, N.Y., Inc.*), 745 F.3d 30, 36 (2d Cir. 2014).

Section 1292(b)'s first prong requires "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Youngers v. Virtus Inv. Partners Inc.*, 228 F. Supp. 3d 295, 298 (S.D.N.Y. 2017) (internal quotation marks omitted). "The question must also be 'controlling' in the sense that reversal of the [district] court would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome." *In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005); *see also Klinghoffer*, 921 F.2d at 24. To establish the second prong—that a "substantial ground for difference of opinion" exists—the moving party must show that "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Garber v. Office of the Comm'r of Baseball*, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014) (quoting *Florio v. City of New York*, No. 06-cv-6473, 2008 WL 3068247, at *1, 2008 U.S. Dist. LEXIS 59022, at *3 (S.D.N.Y. Aug. 5, 2008)). The issue must involve "more than just a strong disagreement among the parties." *Donohue v. Madison*, No. 13-cv-918, 2017 WL 3206326, at *5, 2017 U.S. Dist. LEXIS 117632, at *13 (N.D.N.Y. July 27, 2017) (internal quotation marks omitted). With regard to the third prong, an "immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or to shorten the time required for trial." *Transp. Workers Union, Local 100 v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005) (internal quotation marks omitted).

### C.    Certification Under Fed. R. Civ. P. 54(b)

Rule 54(b) provides that, "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b); *see also Info. Res., Inc. v. Dun & Bradstreet Corp.*, 294 F.3d 447, 451 (2d Cir. 2002) (identifying three requirements under Rule 54(b): (1) the

5

presence of multiple claims or parties; (2) a final decision within the meaning of 28 U.S.C. § 1291 as to "at least one claim, or the rights and liabilities of at least one party"; and (3) an express determination by the district court that there is no just reason for delay and an express direction to the clerk to enter judgment). "The policy against piecemeal appeals 'requires that the court's power to enter such a final judgment before the entire case is concluded, thereby permitting an aggrieved party to take an immediate appeal, be exercised sparingly.'" *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011) (quoting *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991)). A district court should not grant Rule 54(b) certification and "enter final judgment dismissing a given claim unless that claim is separable from the claims that survive." *Hogan v. Conrail*, 961 F.2d 1021, 1026 (2d Cir. 1992) (quoting *Cullen v. Margiotta*, 811 F.2d 698, 711 (2d Cir. 1987)). The Second Circuit "has articulated several standards to aid in determining whether claims are separate for Rule 54(b) purposes:"

> Only "[w]hen the certified claims are based upon factual and legal questions that are distinct from those questions remaining before the trial court" may the certified claims "be considered separate claims under Rule 54(b)." We examine the relationships among a plaintiff's theories of recovery to determine whether they "lend themselves to review as single units, or whether they are so interrelated and dependent upon each other as to be one indivisible whole."
>
> We have also suggested that the existence of multiple claims turns on "whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced." Commentators have interpreted this test to mean that "when a claimant presents a number of legal theories, but will be permitted to recover only on one of them," there exists only a single claim for relief.

*Acumen Re Mgmt. Corp. v. Gen. Sec. Nat. Ins. Co.*, 769 F.3d 135, 141 (2d Cir. 2014) (citations omitted) (holding that the plaintiff's "five theories of breach [of contract] do not qualify as separate claims" as the "failures are alleged to have caused only a single harm" giving rise "to

6

the same quantum of damages," regardless of "whether [the plaintiff] succeeds on one theory or five"). A "determination of whether to grant Rule 54(b) certification is committed to the discretion of the district court." *Harriscom*, 947 F.2d at 629.

## IV. DISCUSSION

### A. Count 1

Plaintiff asks the Court to reconsider the dismissal of his fair trial claim as barred by the applicable three-year statute of limitations. In his motion, Plaintiff does not seek to revisit the Court's ruling that his claim accrued on the date of his release from custody, as opposed to the date that his conviction was vacated; instead, he argues that the custody period, for accrual purposes, did not end when he was released from imprisonment but continued until completion of his post-release supervision. (*See* Dkt. No. 108-1, at 9–10). Despite the limited scope of Plaintiff's motion, on reconsideration, the Court has reviewed the authorities cited in its August 18, 2017 Decision. The Court recognizes that those cases do not squarely address the specific accrual issue presented in this case, where Plaintiff was allegedly convicted as a result of fabricated and withheld exculpatory evidence, served his sentence, was released from custody, later succeeded in having his conviction vacated, and then brought a fair trial claim seeking damages under § 1983 for, inter alia, his wrongful conviction. After undertaking an extensive review of the case law in this and other circuits, the Court has come to the conclusion that Plaintiff's fair trial claim accrued on the date that his conviction was vacated. Accordingly, the Court must revise its prior ruling. *See Zhu*, 41 F. Supp. 3d at 342 (stating that a Court may grant a motion for reconsideration to correct a ruling on a question of law or prevent manifest injustice).

The accrual date for a § 1983 action is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The "standard rule" is that accrual begins "when the plaintiff has a

7

complete and present cause of action," that is, "when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks omitted). There is an additional wrinkle, however, for § 1983 claims that "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). Noting "concerns for finality and consistency" of judgments and its disinclination "to expand opportunities for collateral attack" on criminal convictions, the Supreme Court determined in *Heck* that § 1983 damages actions "are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 484–86. Accordingly, the Court held that,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486–87 (footnote omitted). In *Heck*, the Court concluded that it did not need to address the statute-of-limitations issue, and whether equitable tolling applied during the time that state challenges were being pursued, "since the § 1983 claim has not yet arisen." *Id.* at 489. The Court determined that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence *does not accrue until the conviction or sentence has been invalidated.*" *Id.* at 489–90 (emphasis added); *see also Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999). The Second Circuit has likewise acknowledged *Heck*'s implications for determining a claim's accrual date. *See Hadid v. City of New York*, No. 16-4226, 2018 WL 1836093, at *1, 2018 U.S. App. LEXIS 9725, at *3 (2d Cir. Apr. 18, 2018) (summary order) ("*Heck* stands for the principle that, where a § 1983 claim would be factually inconsistent with an extant criminal conviction, the claim does not accrue until the conviction is overturned. This rule follows from

8

the broader principle that a § 1983 claim should not function as a means by which to relitigate the facts underlying a conviction." (citation omitted)).

On reconsideration, the Court recognizes that the cases it cited in its August 18, 2017 Decision did not squarely address the specific issue of accrual of § 1983 fair trial claims that necessarily implicate the validity of a criminal conviction. Whereas these cases are silent on accrual, *Heck* itself spells out a rule of accrual, and there is persuasive authority applying this rule to fair trial claims similar to the one at issue in this case, which involves allegations of fabricated evidence and withheld exculpatory evidence. The case of *Nnodimele v. Derienzo*, for example, also involved a fair trial claim based upon the fabrication of evidence and withholding of evidence in violation of *Brady*. *See* No. 13-cv-3461, 2016 WL 3661273, at *3, 2016 U.S. Dist. LEXIS 87015, at *8–9 (E.D.N.Y. July 5, 2016). The district court rejected the defendants' argument that these claims accrued before the plaintiff's conviction and were therefore untimely. *Id.* The court noted that "there is controlling authority" in the Second Circuit for the proposition that *Brady* violations necessarily implicate the invalidity of a challenged conviction. *See* 2016 WL 3661273, at *3, 2016 U.S. Dist. LEXIS 87015, at *7–8 (citing *Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014)); *see also Poventud*, 750 F.3d at 168 (Livingston, J., dissenting) ("*Heck* itself involved a *Brady* claim"). Consequently, under *Heck*, the conviction reversal date is the date of accrual for fair trial claims involving *Brady* violations. *See Nnodimele,* 2016 WL 3661273, at *3, 2016 U.S. Dist. LEXIS 87015, at *7–8; *accord Owens*, 767 F.3d 379, 390–92 (4th Cir. 2014) (applying the *Heck* accrual rule to a plaintiff's "*Brady*-like claim" because "malicious prosecution provides the closest analogy" to such a claim).

Based on these principles, many courts in this circuit, when presented with § 1983 fair trial claims necessarily challenging the validity of a previous criminal conviction based upon

fabricated evidence, have also used the date of invalidation of the criminal conviction as the accrual date. *Nnodimele,* 2016 WL 3661273, at *3, 2016 U.S. Dist. LEXIS 87015, at *8-9. For example, in *Bailey v. City of New York*, the court rejected the defendants' argument that the plaintiff's fair trial claim accrued at trial or upon the return of a guilty verdict; instead, the court used the date that the plaintiff's conviction was overturned. *See* 79 F. Supp. 3d 424, 454–55 (E.D.N.Y. 2015). Citing *Heck*, the court reasoned that, had the plaintiff "raised his fair trial claim—premised on the fabrication of evidence, which resulted in his arrest and subsequent conviction—prior to the date his conviction was invalidated, his complaint would have been dismissed because it would have necessarily implied the unlawfulness of his conviction." *Id.* Likewise, in *Thomas v. City of Troy*, the court found that "the latest date that the statute of limitations would have begun to run [on the fair trial claim] was when Plaintiff's criminal conviction was overturned." No. 17-cv-626, 2018 WL 1441301, at *8, 2018 U.S. Dist. LEXIS 47109, at *23 (N.D.N.Y. 2018), *appeal docketed*, No. 18-888 (2d Cir. Mar. 30, 2018). Further, there is also "ample case law" in other circuits applying the *Heck* accrual rule to fair trial evidence fabrication claims challenging past convictions. *See Nnodimele*, 2016 WL 3661273, at *3, 2016 U.S. Dist. LEXIS 87015, at *8–9 (citing *Bradford v. Scherschligt*, 803 F.3d 382, 387–88 (9th Cir. 2015), and *Mondragon v. Thompson*, 519 F.3d 1078, 1082–83 (10th Cir. 2008)).[2]

---

[2] The Court recognizes that this issue is not settled within this circuit. In their original motion to dismiss, (Dkt. No. 59-4, at 20), Defendants cited *Mitchell v. Home*, 377 F. Supp. 2d 361, 373 (S.D.N.Y. 2005), for the proposition that a "fair trial claim premised on fabrication of evidence accrues when the plaintiff learns or should have learned that the evidence was fabricated and such conduct causes the claimant some injury." Relying on that proposition, they argued that the fair trial fabricated evidence claim accrued when Plaintiff discovered the fabricated evidence before trial because "Plaintiff was aware that Defendants had fabricated evidence against him, the plastic baggie with crack/cocaine, which had been forwarded to the prosecutors." (*See* Dkt. No. 59-4, at 19–20). Further, in their motion, (*see id.* at 20), Defendants cited a First Amendment retaliation case, in which the Second Circuit noted that the "*Heck* rule *does not* delay the accrual of 'an action which would impugn *an anticipated future conviction*,'" *Smith v. Campbell*, 782 F.3d 93, 101 (2d Cir. 2015) (quoting *Wallace*, 549 U.S. at 393). Defendants concluded that "Plaintiff was never entitled to any *Heck* delayed accruals or tolling as there was no criminal adjudication at the time he became aware of the fair trial fabrication of evidence claim." (Dkt. No. 59-4, at 20). This argument, however, appears to misunderstand the nature of Plaintiff's fair trial claim, which is that fabricated evidence and withheld evidence were used to wrongfully convict Plaintiff. (*See* Dkt. No. 33, ¶ 635). In other words, Plaintiff's fair trial

Therefore, the Court has decided to revise its ruling and use the conviction invalidation date as the date that the three-year statute of limitation started to run on Plaintiff's fair trial claim. As the Court noted in its previous Decision, Plaintiff's fair trial claim "necessarily challenges the validity of his conviction, since he alleges that he received an unfair trial due to the *Brady/Giglio* violation and the fabrication of evidence." (Dkt. No. 99, at 10). Under *Heck*, therefore, his claim accrued when his conviction was vacated in June 2015. (*See* Dkt. No. 33, ¶ 9). Plaintiff commenced this action on August 3, 2016, well within three years of the date of accrual. Accordingly, Plaintiff's fair trial claim is timely and should be reinstated.

Since Plaintiff's fair trial claim is timely, the Court must now address the Utica Defendants' additional argument that *Parratt v. Taylor*, 451 U.S. 527 (1981), bars Plaintiff's fair trial claim. (Dkt. No. 59-4 at 12–16). Although the Court did not reach that particular issue in its August 18, 2017 Decision, the Court noted that two circuit courts of appeals had rejected a similar argument. (Dkt. No. 99, at 11 n.7). In *Parratt*, the Supreme Court remarked that, in some circumstances, a state that deprives a person of property may satisfy due process requirements without "normal predeprivation notice and opportunity to be heard" as long as the state provides postdeprivation remedies. *Parratt*, 451 U.S. at 538, *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). "The Supreme Court then further expanded the doctrine . . . to

---

claim impugned the validity of a past, not a future, criminal conviction. As the Supreme Court observed in *Wallace*, "the *Heck* rule for deferred accrual . . . delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn." 549 U.S. at 393. "[T]he majority of district courts interpret [a fair trial] claim as challenging the validity of the underlying conviction, implicating *Heck* and its delayed accrual rule." *Smalls v. City of New York*, 181 F. Supp. 3d 178, 185 (E.D.N.Y. 2016) (referring to *Mitchell*, the case relied on by Defendants, as an "outlier[]"); *see also Shabazz v. Kailer*, 201 F. Supp. 3d 386, 396 (S.D.N.Y. 2016) (ruling that a "fabrication of evidence claim [that] implicates the validity of [plaintiffs'] convictions does not accrue until the invalidation of their convictions").

Additionally, in a nonprecedential summary order, the Second Circuit has affirmed the dismissal of various § 1983 claims, including a fair trial fabricated evidence claim, based on *Heck* "because success on those claims 'would necessarily invalidate' [the plaintiff's] conviction on the counts that had not been reversed or vacated." *Warren v. Fischl*, 674 F. App'x 71, 72 (2d Cir. 2017) (summary order). Although *Warren* does not discuss accrual, it suggests, when read together with *Hadid*, 2018 WL 1836093, at *1, 2018 U.S. App. LEXIS 9725, at *3, that the *Heck* accrual rule applies to a fair trial fabricated evidence claim that challenges a past conviction.

11

cases of alleged deprivation of liberty, ruling that 'the reasoning of *Parratt* and *Hudson* emphasizes the State's inability to provide predeprivation process because of the random and unpredictable nature of the deprivation, not the fact that only property losses were at stake.'" *Mastronardi v. Loszynski*, 29 F. App'x 735, 736–37 (2d Cir. 2002) (quoting *Zinermon v. Burch*, 494 U.S. 113, 132 (1990)). The Utica Defendants cite no authority for the proposition that fair trial claims involving *Brady/Giglio* violations or fabrication of evidence are "random and unpredictable" deprivations of liberty, and the cases they cite are easily distinguishable. (*See* Dkt. No. 59-4, at 14 (citing *Galdamez v. Taylor*, 329 F. App'x 300, 302 (2d Cir. 2009), which affirmed the dismissal of a prisoner's due process claim concerning the removal of property from his cell; and *Mastronardi*, 29 F. App'x at 736–37, which affirmed the dismissal of a public employee's due process claims because he "received all the predeprivation process he was due" in the form of notice and a pretermination hearing)). Accordingly, the Court declines to dismiss Plaintiff's fair trial claim based on *Parratt*.

### B.     Counts 9 and 10

Plaintiff moves for certification under § 1292(b) or entry of partial final judgment under Rule 54(b) in connection with the Court's dismissal of Plaintiff's defamation (Count 9) and respondeat superior (Count 10) claims against the Press Defendants. (Dkt. No. 108-1, at 24–27). In its August 18, 2017 Decision, the Court found that the statements made by Defendant McNamara and reported by Defendant Parker fell within the meaning of "official proceeding" under section 74 of the New York Civil Rights Law, and that Defendant Parker's article was a "fair and true report" of Defendant McNamara's official statements. (*See* Dkt. No. 99, at 41–45). As section 74 protects the "publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding," N.Y. Civ. Rights Law § 74, the Court

concluded that the article was absolutely privileged and, consequently, the defamation and respondeat superior claims should be dismissed, (Dkt. No. 99, at 45).

On reconsideration, Plaintiff contends that the Court failed to consider the contents of an alleged email that Polly G. Sacks, general counsel for Defendant Gatehouse Media, sent to Plaintiff on October 27, 2015, explaining that "[t]he allegedly offending statements in the article were taken from official records and statements of a public official (DA)" and that "[i]f indeed any of these official statements or documents were incorrect, we can certainly consider a follow up article." (Dkt. No. 33, ¶¶ 460, 461; Dkt. No. 108-1, at 22). Plaintiff also maintains that some portions of the article "could not be fully attributed to District Attorney McNamara" and are therefore not covered by section 74.[3] (Dkt. No. 108-1, at 25–26).

To the extent that Plaintiff's argument is that the unattributed portions of the article do not report on official/judicial proceedings because they are derived from records falling outside the scope of official/judicial proceedings, the argument fails. In the Amended Complaint, Plaintiff challenged paragraphs 6 through 12 of the article as defamatory, (*see* Dkt. No. 33, ¶¶ 476–573), but the only paragraphs not expressly attributed to Defendant McNamara are paragraphs 9 and 12, (*see* Dkt. No. 33-3). With regard to these two paragraphs, the Court explained in its August 18, 2017 Decision that it would credit Plaintiff's own allegations that "McNamara made all of the defamatory statements in the article and that Parker 'relied exclusively on McNamara.'" (Dkt. No. 99, at 43 n.25). The Court also noted that those allegations were consistent with the article overall and with McNamara's affidavit.[4] (*Id.*).

---

[3] Plaintiff also takes issue with the Court's finding that the statements in the article are a report of an official proceeding rather than a report of a judicial proceeding. (*See* Dkt. No. 108-1, at 25–26, Dkt. No. 122, at 4–5). However, section 74 protects both official and judicial proceeding reports. Thus, Plaintiff's argument is unavailing.

[4] In his reply brief, Plaintiff claims that the Court should not have considered Defendant McNamara's affidavit, which Plaintiff attached to his Amended Complaint. (Dkt. No. 122, at 5–7). That argument is without merit. On a motion to dismiss under Rule 12(b)(6), a court may consider "the facts as asserted within the four corners of the

13

Because the Court need not accept as true "factual assertions that are contradicted by the complaint itself, [or] by documents upon which the pleadings rely," *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011), the Court does not have to draw the contradictory inference that Plaintiff now apparently seeks—that paragraphs 9 and 12 derive from records outside of official/judicial proceedings. There being no "controlling question of law" to certify, and in light of the policy against piecemeal appeals underpinning the sparing use of partial final judgments, the Court declines to grant certification under either § 1292(b) or Rule 54(b).[5]

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for reconsideration and certification under 28 U.S.C. § 1292(b) and Rule 54(b) (Dkt. No. 108) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Plaintiff's procedural due process fair trial claim (Count 1 of the Amended Complaint) is reinstated; and it is further

**ORDERED** that Plaintiff's motion (Dkt. No. 108) is otherwise **DENIED**; and it is further

---

complaint, *the documents attached to the complaint as exhibits*, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (emphasis added).

[5] In his reply brief, Plaintiff requests that, "should the Court not grant Rule 54(b) Certification for Partial Judgment or 28 USC Section 1292(b) Certification," the Court "convert in part the motion to a Motion for Reconsideration of the Court Dismissal with Prejudice Counts 9 and 10/9th and 10th Causes of Action." (Dkt. No. 122, at 3). As discussed above, however, the Court has considered and rejected Plaintiff's new arguments; Plaintiff's request for reconsideration is accordingly denied.

**ORDERED** that the Clerk of Court shall serve a copy of this Memorandum-Decision and Order to Plaintiff along with copies of the unpublished decisions cited in this decision.

**IT IS SO ORDERED.**

Dated: May 25, 2018
       Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
U.S. District Judge